IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH J. TAGGART | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GMAC MORTGAGE, LLC, et al. | : | NO. 12-415 |

## <u>MEMORANDUM & ORDER</u>

AND NOW, this 26th day of November, 2012, upon consideration of the motion to dismiss filed by defendants, the Department of Housing and Urban Development ("HUD"), the Federal Housing Administration ("FHA"), and the United States of America (the "federal defendants")[1] (Dkt. 7, 20) and plaintiff's opposition (Dkt. 19), I HEREBY ORDER that defendants' motion to dismiss is GRANTED.[2]   However, plaintiff's due process claim regarding the adequacy of his hearing with HUD officials, as raised in his response to the federal defendants' motion to dismiss and incorporated in his second amended complaint, is allowed to proceed.   Defendants shall file an answer or other pleading within 20 days of this order.

In connection with this order, I make the following findings and reach the following conclusions:

1.    Plaintiff, Kenneth Taggart, alleges that his mortgage servicer, GMAC, erroneously reported him in default on his FHA-insured mortgage which led HUD to rescind his eligibility to appraise FHA mortgages – a decision made without affording him due process or a fair trial.

---

[1] This order does not pertain to the claims against GMAC Mortgage, LLC ("GMAC"), as that action has been stayed due to GMAC's pending bankruptcy.   *See* Dkt. 9.

[2] Any possible claims against Senators Arlen Spector, Robert Casey, Jr., and Congressman Patrick Murphy, who are named in Taggart's complaint, are dismissed.   In addition to what appears to be lack of service upon these Members of Congress, Taggart fails to plead any facts that would support a cognizable claim against any of these individuals.

2.      Taggart filed his original complaint on January 26, 2012, and an amended complaint on March 22, 2012, alleging violations of his federal and Pennsylvania constitutional rights and various other tort claims.   Taggart's first amended complaint includes 15 separate claims for relief, which are described in detail below.

3.      According to his first amended complaint, Taggart had a disagreement with GMAC regarding the amount of his mortgage payments, in addition to escrow calculations and payment of hazard insurance.   Taggart did not pay the monthly payments demanded by GMAC.   *Am. Compl.* ¶ 15; *Pl.'s Resp.* 2.   As a result, GMAC filed a foreclosure complaint for non-payment in August 2009 in the Court of Common Pleas of Montgomery County.   *Am. Compl.* ¶ 16.   That case is still pending.   *See GMAC Mortgage, LLC, v. Taggart*, No. 2009-25338 (Montgomery Cnty. Ct. Com. Pl. filed Aug. 14, 2009).[3]

4.      Taggart was in the business of appraising properties in order to determine the maximum insurable mortgage for both FHA-insured mortgages and non-FHA-insured mortgages. *Am. Compl.* ¶¶ 4, 44.[4]   In order to appraise a property that is to be the security for an FHA-insured single family mortgage, Taggart must be on HUD's list of approved appraisers, referred to as the "Appraiser Roster."   *See* 24 C.F.R § 200.200.   To be on the Appraiser Roster, he must be a state-certified appraiser with certain credentials and he must <u>not</u> be listed on one of three lists, including HUD's Credit Alert Verification Reporting System ("CAVRS"). [5]   *See* § 200.202(b).

---

[3] The amended complaint and Taggart's response to the motion to dismiss contain many additional details regarding this dispute with GMAC, including allegations of fraud and misconduct by GMAC throughout its foreclosure proceedings, but that information is not relevant to my decision and requires no additional discussion.

[4] The complaint and briefs for the motion to dismiss provide very little explanation of Taggart's business, for example, whether this was his sole source of income or a supplement to other employment.

[5] The parties refer to this list as CAVRS and also as "CAIVRS," which stands for Credit Alert Interactive Voice Response System.   The CAIVRS terminology was used in a prior version of the regulation.   *See* 24 C.F.R.

HUD can remove an approved appraiser at any time from the Appraiser Roster "for cause" due to, *inter alia*, the failure to maintain the eligibility requirements set forth in 24 C.F.R. § 200.202(b). *See* § 200.204(a)(1)(vii).

5.      HUD is then required to follow the procedures for removal described in 24 C.F.R. § 200.204(a)(2).[6]   HUD must provide written notice to the appraiser of his or her proposed removal, with the notice containing the reason(s) for and duration of the proposed removal. § 200.204(a)(2)(i).   The appraiser has 20 days from the date of the notice to submit a "written response appealing the proposed removal and to request a conference."   § 200.204(a)(2)(ii). HUD will provide a final decision of the appeal, either affirming, modifying, or canceling the removal, within 30 days (or more if the time is extended by HUD with notice to the appraiser) of receiving the appraiser's written response or completing the conference.   § 200.204(a)(2)(iii).   If the appraiser does not request a conference or submit a written appeal, the removal is effective 20 days after the date of HUD's initial notice.   § 200.204(a)(2)(iv).

6.      In response to Taggart's alleged non-payment, GMAC reported him as being in default via HUD's CAVRS.   *Am. Compl.* ¶ 17.   As a consequence, HUD removed Taggart from the Appraiser Roster on January 27, 2010.   *Id.*   While it is unclear whether Taggart is claiming that he did not get notice of this decision by HUD, he does allege that he never received a conference or an opportunity to challenge the facts upon which his removal was based, despite his repeated requests to HUD and other government officials.   *Id.* at ¶ 19.   Moreover, the federal

---

§ 200.202 (effective Feb. 7, 2008 through Dec. 22, 2011).   I will use the current term.

[6] 24 C.F.R. § 200.204(a)(3) states that an appraiser can be automatically removed from the Appraiser Roster without receiving the notice and procedures required in subsection (a)(2) for such limited reasons as "the issuance of final debarment, suspension, or limited denial of participation."   Neither party contends that this section applied to Taggart.

defendants acknowledge HUD's failure to follow the regulations, stating in their motion to dismiss that "HUD determined that it did not follow the required procedures to remove Taggart from the Appraiser Roster."   *Defs.' Br.* 5.

7.     More than two years after removing Taggart from the Appraiser Roster, and after Taggart filed the present action, HUD attempted to remedy its earlier mistake by rescinding his removal and reinstating him to the Appraiser Roster.   *Defs.' Br.* 5.   This was done by letter dated April 5, 2012, with an updated version, without any significant differences, sent to Taggart on April 12, 2012.   *Pl.'s Resp., Ex.* C.   The letter informed Taggart that he was reinstated to active status and simultaneously advised him of HUD's intent to initiate the process of removing him from the Appraiser Roster pursuant to 24 C.F.R. § 200.204.   *Id.*   HUD cited Taggart's failure to maintain the eligibility requirements, *i.e.*, being listed on CAVRS, as the reason for removal.   *Id.* The April 12, 2012 letter also advised Taggart of the process of removal and reinstatement, and notified him that he had until May 2, 2012, to submit a written response appealing the decision and/or requesting a conference.   *Id.*

8.     On April 16, 2012, Taggart sent a letter to HUD requesting a conference and also objecting to the conference because it was not a jury trial.   *Pl.'s Resp., Ex.* E; *Defs.' Br., Ex.* B. Nevertheless, on May 17, 2012, Taggart attended and participated in a conference with HUD representatives.   *Pl.'s Resp.* 9, *Ex.* M.

9.     The federal defendants also filed their motion to dismiss this case on May 17, 2012, arguing that (a) any claims for damages based on alleged constitutional violations are barred by sovereign immunity; (b) any claims for injunctive relief for alleged due process violations were remedied because HUD corrected its error and followed proper procedures, albeit two years

4

delayed, and provided Taggart with notice and a conference; and (c) the federal defendants

articulate a number of additional arguments as to why Taggart's remaining claims should be

dismissed for failure to state a claim against the federal defendants.

       10.    On June 14, 2012, HUD notified Taggart that his default status was accurate and his

removal from the Appraiser Roster was warranted.  *See Pl.'s Resp., Ex.* M (noting Taggart was 39

months in default and owed $162,000 in principal and interest payments).

       11.    On October 1, 2012, Taggart filed a second amended complaint incorporating his

earlier complaints and adding one additional count, asking the court to "cite the defendants for any

other violations of the law."  *Second Am. Compl.* ¶ 3.  Taggart also incorporated into that

complaint his response to the defendants' motion to dismiss, which was also filed on October 1,

wherein he reasserts many of his earlier allegations but also raises a claim that the May 17

conference was not adequate under due process requirements.  *See Pl.'s Resp.* 9-10.

       12.    On October 5, 2012, the federal defendants filed a motion requesting that I accept

their previously filed May 17 motion to dismiss as a response to Taggart's second amended

complaint.  Notably, the federal defendants did not address Taggart's claim that the May 17

conference did not satisfy his due process rights.

       13.    Taggart's claims, as set forth in his first and second amended complaints, can be

summarized as follows:  Counts 1 through 4 allege that his property was taken without due

process in violation of the Fifth and Seventh Amendments of the U.S. Constitution and their state

equivalents; Counts 5 and 8 are claims for "restraint of trade" and for violations of the "Unfair

Trade Practices Act and Consumer Protection Laws;" Counts 6 and 7 are tort claims for

defamation and "tortuous," respectively; Count 9 is a claim under "any other laws that are

applicable to the case;" Counts 10 through 13 challenge HUD's authority to remove appraisers from the Appraiser Roster and again claim that HUD's procedures are unconstitutional; Count 14 seeks an order directing HUD to amend their reporting procedures; Count 15 alleges that Taggart's right to freedom of religion under the First Amendment has been violated; and, finally, Count 16 is a claim for "any other violations of the law given the facts presented in this case."

14.     As a preliminary matter, I find that the doctrine of sovereign immunity bars consideration of Counts 1 through 4 of the amended complaint, as well as any of Taggart's other constitutional claims that seek monetary damages.[7]   "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."   *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).   Such a waiver must come from a specific statute or law, and to date the United States and the federal agencies have not waived immunity for suits seeking money damages for alleged constitutional violations.   *See id.* at 478; *Mierzwa v. United States*, 282 Fed. Appx. 973, 976-77 (3d Cir. 2008).   Moreover, a claim brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), which implied a damages action against individual federal agents for a constitutional violation, is not available against the United States or one of the federal agencies. *Meyer*, 510 U.S. at 484-86 (finding that a direct action for damages against federal agencies would be inconsistent with the deterrence logic of *Bivens* and would create a potentially enormous financial burden on the federal government); *see also Dambach v. United States*, 211 Fed. Appx. 105, 107-08 (3d Cir. 2006) (affirming district court's dismissal of constitutional claims against the United States and Department of Veterans Affairs); *Aladjem v. U.S. Dep't of Hous. and Urban Dev.*, No. 96-6576, 1999 WL 718069, at *3 (E.D. Pa. Sept. 7, 1999) (dismissing due process

---

[7] This includes dismissal of possible claims for monetary damages based on constitutional violations as vaguely pled in other counts, including Counts 7, 9, 10, 11, 12, and 15.

claims for money damages against HUD).

15.     In contrast, the United States has waived sovereign immunity as to constitutional claims seeking equitable remedies.   *See* 5 U.S.C. § 702 (authorizing actions seeking relief other than money damages for persons adversely affected by or suffering legal wrong because of "agency action"); *Jaffee*, 592 F.2d at 718-19; *Aladjem*, 1999 WL 718069, at *3.

16.     Nevertheless, Taggart's claim for any equitable relief based on a violation of the Seventh Amendment, or his right to a "fair trial," is dismissed for failure to state a claim.   It is well-settled that "the Seventh Amendment is generally inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administrative adjudication and would substantially interfere with the [agency's] role in the statutory scheme."   *Curtis v. Loether*, 415 U.S. 189, 194 (1974).

17.     Taggart's claim based on a violation of the First Amendment (Count15) is also dismissed.   Taggart alleges that HUD employee, Avis Ivy, through some kind of statement in e-mail correspondence, "imposed her religious beliefs" on him in violation of his First Amendment right to freedom of religion.   *Am. Compl.* ¶¶ 110-112.   "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   While pleadings need not contain "detailed factual allegations," the Federal Rules of Civil Procedure's pleading requirements "demand[] more than an unadorned, defendant-unlawfully-harmed-me accusation."   *Iqbal*, 556 U.S. at 678.   Taggart simply does not plead any facts that could conceivably state a claim for a violation of his First Amendment.   This claim is dismissed.

18.     As to the final constitutional issue, Taggart claims an alleged deprivation of his property, which he refers to as his "FHA license to perform FHA appraisals," without due process.[8]  To the extent Taggart challenges the lack of a hearing or the failure to provide notice, those defects were cured by the April notice and the May conference.   Taggart also contends that the conference with HUD officials was not in compliance with minimum due process requirements.   As noted above, Taggart incorporated his response to defendants' motion to dismiss in his second amended complaint.   In that response, Taggart refers to various deficiencies with the conference, for example, not being permitted to call witnesses, which resulted in a proceeding that did not constitute due process.   *See Pl.'s Resp.* 9-10.   In arguing to dismiss Taggart's claims for injunctive relief for constitutional violations, the federal defendants contend that Taggart lacks standing because the 2012 notice and conference were in accordance with HUD procedures and corrected any potential due process violation.   While I agree that Taggart can no longer make a due process claim based on the absence of notice or an opportunity to be heard, he has sufficiently pled an "ongoing violation of his rights" when he challenged the adequacy of the May 17 conference.   The federal defendants make no argument in this regard and do not consider this claim in their motion to dismiss.   Thus, I will permit Taggart's claim for a due process violation based on the adequacy of his conference to proceed.

19.     Taggart's next set of allegations, in Counts 6, 7, 9, and 16, can be fairly categorized as tort claims against the federal government, thereby falling within the Federal Tort Claims Act ("FTCA").   The FTCA waives the sovereign immunity of the United States as to money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act

---

[8] Reading Taggart's complaints as a whole, it appears as though he seeks the following equitable relief for the alleged due process violations:   reinstatement as an FHA-appraiser, a hearing that comports with due process, and an order declaring HUD's procedures governing the removal of appraisers from the Appraiser Roster unlawful.

or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."   28 U.S.C. § 1346(b).   The FTCA is the exclusive remedy for claims sounding in tort against the United States and its agencies.   28 U.S.C. § 2679; *see also J.D. Pflaumer v. U.S. Dep't of Justice*, 450 F. Supp. 1125, 1132 n.11 (E.D. Pa. 1978).

20.    As an initial matter, the only proper defendant to a potential claim under the FTCA is the United States.   While the United States has waived immunity under the FTCA for certain torts committed by federal employees, federal agencies cannot be sued in their own names.   *See* 28 U.S.C. § 2679(a); *Dambach*, 211 Fed. Appx. at 108.   Thus, all of Taggart's claims sounding in tort brought against HUD and FHA are dismissed.

21.    In Count 6, Taggart alleges that the government's actions "defamed" his personal and professional reputation as an appraiser by erroneously reporting him as ineligible to be on the Appraiser Roster and by removing him from the roster without due process or a fair trial.   *Am. Compl.* ¶ 49.   There are a number of exceptions to the FTCA's waiver of sovereign immunity which are set forth in 28 U.S.C. § 2680.   Among them are claims based on defamation.   *See* 28 U.S.C. § 2680(h) ("The provisions of this chapter and section 1346(b) of this title shall not apply to…[a]ny claim arising out of…libel, slander, misrepresentation, deceit, or interference with contract rights"); *Brumfield v. Sanders*, 232 F.3d 376, 382 (3d Cir. 2000) ("The [FTCA] bars actions against the United States for…defamation.").   Thus, a defamation claim against the United States is not permitted and I will dismiss Taggart's sixth claim for relief.

22.    Count 7 of Taggart's amended complaint alleging that defendants' actions were

"tortuous" and caused him a plethora of harm is dismissed for failure to state a claim upon which

relief can be granted.   Because Taggart offers mere "labels and conclusions" and no more than

"threadbare recitals," his claim cannot survive a motion to dismiss.[9]   *See Iqbal*, 556 U.S. at 678;

*Twombly*, 550 U.S. at 555.

23.     For the same reasons, any other claims that could possibly sound in tort (*i.e.* Counts

9 and 16) are also dismissed.   These counts fail to allege any legal theory or factual content that,

even if taken as true at this stage, could support a claim for relief.[10]

24.     Next, Counts 5 and 8 are dismissed with prejudice because Taggart does not allege

any specific misrepresentations or conduct actionable under an applicable consumer protection

statute.   Taggart alleges that the federal defendants "restrained [his] ability to 'make a living' as

an appraiser" by preventing him from completing FHA and other appraisals and he complains that

the "actions of all Defendants are a violation of the 'Unfair Trade Practices Act & Consumer

Protection Laws' and caused [him] harm."   *Am. Compl.* ¶¶ 44, 59.   Taggart does not indicate

which statute he claims the defendants have violated, or whether he is alleging a cause of action

_____

[9] This same reasoning applies to any attempt Taggart makes to plead a negligence action within his response to the defendants' motion to dismiss.   *See Pl.'s Resp.* 14.   Merely citing the language of the FTCA is not sufficient to meet the pleading standards announced in *Iqbal* and *Twombly*.

[10] Another potential roadblock to Taggart's recovery under the FTCA is the statute's administrative exhaustion rule, which is a jurisdictional requirement.   That rule provides that "[a]n action shall not be instituted upon a claim against the United States for money damages for...injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of this office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency."   28 U.S.C. § 2675(a).   The notice requirement of § 2675 will be satisfied if the claimant "(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim."   *See Tucker v. U.S. Postal Serv.*, 676 F.2d 954, 959 (3d Cir. 1982).   Taggart has not alleged that he complied with either prerequisite.   While Taggart apparently filed a complaint, on May 21, 2012, with the Inspector General of HUD, this complaint details his grievances with GMAC and his allegations of fraud and wrongful foreclosure – the complaint does not set forth Taggart's claims against the federal defendants, nor does it include a sum certain of his alleged damages.   *See Pl.'s Resp., Ex.* K.

under federal or state law.

25.     If Taggart is attempting to bring a claim under the federal consumer protection law found in § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices, his claim fails because private parties are not authorized to file enforcement actions, only the FTC has that authority.   *See Vino 100, LLC v. Smoke on the Water, LLC*, No. 09-4983, 2012 WL 1071174, at *8 (E.D. Pa. Mar. 30, 2012); *see also Holloway v. Bristol–Myers Corp.,* 485 F.2d 986, 987, 1001 (D.C. Cir.1973) (holding there is no express or implied private right of action to enforce the Federal Trade Commission Act).

26.     Alternatively, if Taggart is seeking relief under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), which he makes reference to in the "Jurisdiction & Venue" section of his amended complaint, his claim also fails.   While Taggart does not specify the provision of the UTPCPL that applies in his case, he is likely attempting to bring a claim under the catch-all provision, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."   73 P.S. § 201-2(4)(xxi).   Pennsylvania law appears to require a plaintiff to prove the elements of common-law fraud in order to establish a claim under the catch-all section, or at the very least, justifiable reliance.   *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 226 (3d Cir. 2008) ("[T]he Supreme Court of Pennsylvania has announced and applied a broad rule that private plaintiffs must allege justifiable reliance under the Consumer Protection Law."); *Taggart v. Wells Fargo Home Mortgage, Inc.*, No. 10-cv-00843, 2010 WL 3769091, at *10 (E.D. Pa. Sept. 27, 2010) (collecting cases).   Not only does Taggart fail to identify any misrepresentation made to him by the federal defendants, but he fails to allege facts to suggest he "'justifiably relied on the defendant[s']

wrongful conduct or representation and that he suffered harm as a result of that reliance.'"  *Hunt*, 538 F.3d at 224 (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004)). Thus, Taggart's UTPCPL claim fails under either the ordinary pleading standard set forth in *Twombly* or the heightened particularity requirement under Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

27.     Taggart's claims challenging HUD's authority under the law to remove appraisers from the Appraiser Roster for "simply being on the 'CAVRS List'" and his claims requesting that HUD's procedures be "abolished," are dismissed for failure to state a claim upon which relief can be granted.  *See Am. Compl.* ¶ 70, 71, & 97.   Taggart provides no supporting factual or legal basis for his claims.  *See Twombly*, 550 U.S. 544; *Iqbal*, 556 U.S. 662.   Moreover, the regulations explicitly state that eligibility for placement on the Appraiser Roster is contingent upon not being listed on HUD's CAVRS, and the causes for removal include failure to maintain any of the eligibility requirements.  *See* 24 C.F.R. §§ 200.202(b), 200.204(a).   Taggart's alternative claim that this policy of removing appraisers who appear on CAVRS should be abolished is without merit.   HUD has the authority to adopt reasonable and non-arbitrary regulations in order to establish certain eligibility requirements for appraisers of FHA-mortgages in order to protect its insurance funds.   *See* 44 U.S.C. § 3535(d) ("The Secretary [of HUD]…may make such rules and regulations as may be necessary to carry out his functions, powers, and duties.").

28.     Finally, Taggart requests that I order the federal defendants to change the reporting procedures for the payment or performance status of loans to HUD's CAVRS list.   Taggart has stated no legal or factual basis for his apparent request for the extraordinary remedy of a writ of

12

mandamus under 28 U.S.C. § 1361.   To obtain such relief, a plaintiff must establish three elements:   (1) plaintiff's clear right to the relief requested; (2) the defendant's clear duty to act; and (3) plaintiff has no other adequate remedy available.   *Taylor v. U.S. Dep't of Labor*, 552 F. Supp. 728, 744 (E.D. Pa. 1982).   Among other deficiencies with respect to this claim, Taggart does not provide any support for the proposition that the federal defendants had a duty to obtain a judicial adjudication regarding the status of his loan before Taggart could be reported in default via CAVRS.   Therefore, Count 14 is also dismissed.

29.     In sum, the federal defendants' motion to dismiss is granted, with the exception of Taggart's due process claim for equitable relief based on the inadequacy of his conference with HUD.   Twenty days is sufficient time for the federal defendants to answer or file another pleading.

BY THE COURT:


/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., J.

13