IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH J. TAGGART | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GMAC MORTGAGE, LLC, et al. | : | NO. 12-CV-0415 |

**MEMORANDUM**

Ditter, J.                                                                                              August 12, 2013

Plaintiff, Kenneth Taggart, alleges that his mortgage servicer, GMAC, erroneously reported him in default on his FHA-insured mortgage which led the Department of Housing and Urban Development ("HUD") to rescind his eligibility to appraise FHA mortgages – a decision he claims was made without affording him due process. Before me is the motion of the United States, HUD, and FHA (collectively referred to as the "federal defendants") for summary judgment, which I will grant.[1]

**I.     BACKGROUND**[2]

The facts and procedural history of this case are detailed in my November 26, 2012 opinion dismissing all but one of plaintiff's claims (Dkt. 21), but I will provide a brief summary of the relevant background information for ease of reference.

Taggart had a disagreement with GMAC regarding the amount of his payments, including escrow calculations and payment of hazard insurance, on an FHA-insured mortgage serviced by GMAC. GMAC assessed additional payments for hazard insurance because it determined that Taggart failed to show proof that he was carrying the appropriate insurance.

---

[1] The action against GMAC is stayed due to GMAC's pending bankruptcy. *See* Dkt. 9.

[2] Where the facts are agreed, I have not cited to the record.

Taggart contends that he was properly insured and therefore he did not pay the monthly payments demanded by GMAC. As a result, GMAC filed a foreclosure complaint for non-payment in August 2009 in the Court of Common Pleas of Montgomery County, Pennsylvania.

Taggart was in the business of appraising properties in order to determine the maximum insurable mortgage for both FHA-insured mortgages and non-FHA-insured mortgages. In order to appraise a property that is to be the security for an FHA-insured single family mortgage, Taggart must be on HUD's list of approved appraisers, referred to as the "Appraiser Roster." *See* 24 C.F.R. § 200.200. To be on the Appraiser Roster, he must be a state-certified appraiser with certain credentials and he must <u>not</u> be listed on one of three lists, including HUD's Credit Alert Verification Reporting System ("CAVRS"). *See id.* § 200.202(b).[3] If an appraiser is on CAVRS, HUD will then remove him or her from the Appraiser Roster "for cause" due to the failure to maintain the eligibility requirements set forth in 24 C.F.R. § 200.202(b). *Id.* § 200.204(a)(1).

HUD is then required to follow the procedures for removal described in 24 C.F.R. § 200.204(a)(2). Accordingly, HUD must provide written notice to the appraiser of his or her proposed removal, with the notice containing the reason(s) for and duration of the proposed removal. The appraiser has 20 days from the date of the notice to submit a written response appealing the proposed removal and to request a conference. HUD will provide a final decision of the appeal, either affirming, modifying, or canceling the removal, within 30 days (or more if the time is extended by HUD with notice to the appraiser) of receiving the appraiser's written response or completing the conference.

---

[3] HUD explained that CAVRS was developed in 1987 as a "shared database of defaulted Federal debtors, and enables processors of applications for Federal credit benefits to identify individuals who are in default or have had claims paid on direct or guaranteed Federal loans, or are delinquent or other debts owed to Federal agencies." *Pl.'s Resp. to Fed. Defs.' First Mot. Dismiss*, Exh. M.

In response to Taggart's alleged non-payment, GMAC reported him as being in default via CAVRS.  HUD subsequently removed Taggart from the Appraiser Roster on January 27, 2010.  It is undisputed that Taggart did not receive a notice or an opportunity to attend a conference, as prescribed by the above-mentioned regulations, prior to his removal.

More than two years after initially removing Taggart from the Appraiser Roster, and after Taggart filed the present action, HUD reinstated him to the Appraiser Roster.  This was done by letter dated April 5, 2012, with an updated version, without any significant differences, sent to Taggart on April 12, 2012.  *Pl.'s Resp. to Fed. Defs.' First Mot. Dismiss*, Exh. C.[4]  The letter informed Taggart that he was reinstated to active status and simultaneously advised him of HUD's intent to initiate the process of removing him indefinitely from the Appraiser Roster pursuant to 24 C.F.R. § 200.204.   HUD cited Taggart's failure to maintain the eligibility requirements, *i.e.*, being listed on CAVRS, as the reason for removal.  The letter stated, "According to HUD's records, your FHA Insured Lender, GMAC, has entered data input into the [CAVRS] reflecting your default on your FHA insured mortgage for a property located at 521 Cowpath Road, Telford, PA 18969."  *Id.*  The April 12 letter also advised Taggart of the process of removal and reinstatement, and notified him that he had until May 2, 2012, to submit a written response appealing the decision and/or requesting a conference.

On April 16, 2012, Taggart sent a response letter to HUD, objecting to the fact that it was said he violated an eligibility requirement, challenging that requirement as unconstitutional, requesting a conference while also objecting to that conference because it was not a jury trial,

---

[4] During oral argument, Assistant United States Attorney Susan Bricklin referred to several exhibits that were part of plaintiff's response to the federal defendants' first motion to dismiss (Dkt. 19) (hereinafter referred to as "Pl.'s Resp.").  She also referred to Anthony Triolo's affidavit, which was Exhibit A to the federal defendants' second motion to dismiss (Dkt. 22).  Those exhibits were admitted into evidence without objection as part of the motion for summary judgment.

and asking for additional information regarding the conference process and procedures. *Pl.'s Resp.*, Exh. E.  On May 10, 2012, HUD responded to Taggart's letter wherein it acknowledged his request for a conference and his "six questions regarding the conference." *Pl.'s Resp.*, Exh. F.  HUD offered Taggart two dates from which he could choose to have the conference – May 14 or May 17.  HUD also informed Taggart that the proceeding was an "informal conference" and it was "not a hearing." *Id.*  The letter advised Taggart that he or his "designated representative" would have the "opportunity to explain why you should not be removed from the FHA Appraiser Roster, and given the opportunity to provide any support for that proposition." *Id.*

As to Taggart's specific concerns raised in his April 16 letter, HUD informed Taggart that he could bring a court reporter to the conference at his own expense, and that there was no discovery or issuance of subpoenas in light of the informal nature of the conference.  Finally, HUD stated that "<u>any and all documentation that you may present at the conference</u> will be carefully considered by HUD prior to the issuance of a final determination." *Id.* (emphasis added).

On May 17, 2012, Taggart attended and participated in a conference with HUD representatives at HUD's Philadelphia office.  *See Pl.'s Resp.*, Exh. H (transcript of the proceeding).  In addition to Taggart and the court reporter brought by Taggart, the other individuals present were HUD representatives, Kathleen Roe, Technical Advisor; Andrea Durham, Legal Counsel; and Anthony Triolo, Supervisory Housing Program Specialist.

Following the conference, Triolo notified Taggart via letter dated June 14, 2012, that his default status was accurate and his removal from the Appraiser Roster was warranted and would be effective immediately.  *Pl.'s Resp.*, Exh. M.  In addition to explaining the basis for Taggart's ineligibility, Triolo discussed the various allegations Taggart made at the conference concerning

improper forced hazard insurance and fraudulent foreclosure documents, HUD's consideration of those issues, and his confirmation that Taggart was in default on the FHA-loan in question. *See id.* (stating that Triolo "confirmed that you are 39 months in default, owing your FHA-insured lender in excess of $162,000.00 in principal and interest payments, in addition to property taxes and insurance advanced on your behalf"). Finally, Triolo informed Taggart that he could reapply for placement on the Appraiser Roster if he met all eligibility requirements.

Taggart's original and amended complaints alleged 16 separate claims for relief. As a result of rulings on my part and various motions, the only issue now before me is whether Taggart was afforded due process when he was terminated as an FHA appraiser. Oral argument on the federal defendants' motion to dismiss this remaining claim was held on April 30, 2013. Pursuant to Federal Rule of Civil Procedure 12(d), I converted the federal defendants' motion to dismiss to a motion for summary judgment. As both parties have had the opportunity to file additional briefs and exhibits, the matter is ripe for resolution.

## II.    STANDARD OF REVIEW

The standard for summary judgment is well established. I must consider the evidence in a light most favorable to the non-moving party. If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion. Here, Taggart must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He

"must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1992). He cannot "merely rely upon conclusory allegations in [his] pleadings or in memoranda and briefs." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992).

## III.   DISCUSSION

Taggart challenges the adequacy of HUD's procedures as applied to his removal from the Appraiser Roster, arguing that he was deprived of a property interest without being afforded due process.[5] Specifically, Taggart claims that the conference held on May 17, 2012 was a "farcical attempt at providing [him] with a due process hearing under the regulations." *Pl.'s Brief in Response to Mot. Summ. J.* at 3 (hereinafter "Pl.'s Br."). Taggart does not, as his counsel acknowledged at oral argument, challenge HUD's authority under the regulations. Rather, Taggart alleges that he was denied due process and HUD's ultimate decision to remove him from the Roster was arbitrary and capricious.[6]

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The notice that is required by due process must "apprise the affected individual of, and permit adequate preparation for, an

---

[5] The government conceded at oral argument that Taggart's claimed property interest in the Appraiser Roster is sufficient to warrant due process protection and that the government acted to deprive him of that interest by removing him from the list. *See Cospito v. Heckler*, 742 F.2d 72, 80 (3d Cir. 1984) (listing "three essential elements" to a claim for unconstitutional deprivation of due process: (1) claimant was deprived of a protectable interest; (2) deprivation was due to some government action; and (3) deprivation was without due process).

[6] The "arbitrary and capricious" standard, found under the Administrative Procedure Act ("APA"), gives the reviewing court authority to set aside agency action, findings, and conclusions that are, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). If the APA applied, Taggart would need to show that HUD's decision was not "rational, based on relevant factors, [or] within the agency's statutory authority." *See Frisby v. U.S. Dep't of Hous. and Urban Dev.*, 755 F.2d 1052, 1055 (3d Cir. 1985). Moreover, "[a]gency action is presumed to be valid, and the plaintiff has the burden of producing evidence to rebut this presumption." *AMI Affiliates, Inc. v. U.S. Dep't of Hous. and Urban Dev.*, No. 94-cv-7194, 1995 WL 611324, at *2 (E.D. Pa. Oct. 13, 1995).
As explained later, HUD's decision cannot be considered arbitrary and capricious if Taggart is found to have received due process.

impending 'hearing.'" *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 14 (1978). While "some form of hearing" is typically required prior to final deprivation of a property interest, "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). Informal procedures have been found sufficient to comport with due process under many circumstances. *See, e.g.*, *Memphis Light*, 436 U.S. at 21 (finding that an "informal administrative remedy" of meeting with a designated employee of the utility company to review billing errors was sufficient due process); *Bell v. Burson*, 402 U.S. 535, 540 (1971) ("Clearly…the inquiry into fault or liability requisite to afford the licensee due process need not take the form of a full adjudication of the question of liability."); *Goldberg v. Kelly*, 397 U.S. 254, 266 (1970) (noting that the "pre-termination hearing need not take the form of a judicial or quasi-judicial trial"); *AMI Affiliates*, 1995 WL 611324, at *5 (finding no deprivation of due process where plaintiffs had the opportunity to object to HUD's proposed foreclosure through written objections as well as an informal hearing).

To determine the adequacy of procedural safeguards, the *Matthews* Court created a three factor test that considers "[first] the private interest that will be affected by the official action…[second,] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335.

Applying the *Matthews* three factor test, I conclude that placement on the Appraiser Roster only authorizes the individual to perform FHA appraisals – it neither guarantees income

7

nor precludes other employment. Therefore its continuation requires only minimal safeguards. Second, the risk of error is minimized by the existing procedures, which allow the individual an opportunity to demonstrate compliance with HUD's requirements and contest a relatively narrow issue by presenting argument and supporting evidence during the in-person conference that occurs prior to removal from the Roster. Additional procedures would be of little or no value. Finally, it is important for the government to have an efficient procedure for removing poorly performing appraisers or those who do not comply with HUD's eligibility requirements.

Having found that HUD's procedures meet the requirements of due process, I must analyze those procedures as applied in this case to determine if Taggart was deprived of his place on the Appraiser Roster without adequate notice and the opportunity to be heard.[7]

A. **Notice**

Taggart does not dispute that he received notice from HUD prior to his removal from the Appraiser Roster that became effective June 14, 2012. That notice was in compliance with the notice requirements set forth in the applicable regulations as it informed Taggart of HUD's intention to remove him from the Roster, the basis for the proposed removal and the specific eligibility requirement he was alleged to have been non-compliant with, the duration of the removal, and the next steps Taggart could take in order to challenge the removal. Taggart acknowledged receipt of that notice by responding to it on April 16, 2012.

Rather than take issue with the adequacy of the notice's contents, Taggart challenges the amount of time he was given to prepare for the conference. Taggart contends that he was only given one week's notice before the conference despite his request for "at least a 30 day notice for

---

[7] For the reasons set forth in my November 26, 2012 order, the only issue remaining is whether Taggart received due process as to his removal from the Roster that was noticed April 5 and April 12, 2012, the subject of a conference held May 17, 2012, and finalized by letter dated June 14, 2012. Claims concerning HUD's earlier removal decision in 2010 were dismissed as part of the November 26 order.

date of conference." *Taggart Aff.* ¶ 32.  Taggart requested a 30 day extension but HUD denied his request for a continuance.  *Id.* ¶ 33.  Taggart claims that the brief notice was "a deliberate attempt by HUD to prevent him from adequate preparation."  *Pl.'s Br.* at 3.  HUD asserts that Taggart was "given more than 30 days notice of the conference," and acknowledges its denial of Taggart's requested continuance.  *Def.'s Mot. Dismiss* at 6.

The record shows that Taggart received notice of the proposed removal and the process for requesting a conference via letter on April 5, 2012, and then again on April 12, 2012.  He responded on April 16, 2012 requesting a conference.  HUD replied to that letter on May 10, 2012 with two options for conference dates – May 14 or May 17.  The conference took place on May 17.  Hence, more than 30 days separated the initial notices and the conference date, while only 4 or 7 days separated HUD's notification of dates and the proposed conference dates.

The regulations do not fix any amount of time between the initial notice and the conference date, or between the notice of conference dates and the conference date itself.  Thus, Taggart's claim that "HUD failed to provide at least a 30 day notice" is not based on any obligation HUD had under the regulations.  *See Taggart Aff.* ¶ 32.  Moreover, Taggart became aware of his removal from the Appraiser Roster as early as February 2010 and he acknowledged that shortly after discovering his removal, he spoke with HUD who "told [him] that he was removed because he was on the 'CAIVRS list'" and that "GMAC Mortgage was reporting a default."  *Id.* ¶ 27.  Thus, Taggart was aware of the issue – his alleged default – for over two years.[8]  As Taggart does not explain how an additional 30 days or more would have affected the

---

[8] Indeed, Taggart has been litigating the issue of his default status, along with all his counterclaims against GMAC, in the state court foreclosure proceedings since 2009.  *See Taggart Aff.* ¶ 17 ("Taggart filed a counterclaim to the Foreclosure Complaint alleging, *inter alia*, that [] GMAC artificially inflated his mortgage payment amounts.").

determination of any relevant issue,[9] I conclude he was given adequate notice and opportunity to prepare for the conference.

### B. **Opportunity to be Heard**

Taggart concedes that he was given a conference on May 17, 2012 and that he later received a final decision affirming the initial decision to remove him from the Appraiser Roster, both of which are required by HUD regulations. Taggart contends that the conference itself lacked the formalities and procedures necessary to ensure he was not deprived of his property without due process. Specifically, Taggart claims that the following deficiencies affected his ability to present his case and thereby resulted in a violation of his constitutional rights and an agency decision that was not based on relevant factors:

- Plaintiff was limited to one hour to tell his side of the story.
- One of the HUD representatives present at the conference "did not even know why she was present."
- Taggart did not have the right to legal counsel.
- Taggart could not examine what evidence HUD had in making its determination.
- Taggart was not provided with guidelines or instructions before the conference.
- HUD never attempted to verify the information GMAC reported to CAVRS.
- HUD refused to take any evidence at the conference.

Taggart first argues that the one-hour limit that HUD imposed was arbitrary since the regulations do not specify any time limit. In his brief, Taggart does not say how this time limit

---

[9] During the HUD conference, Taggart did state that he needed more time to gather documents related to alleged fraudulent practices by GMAC. Taggart stated he wanted a 30 day continuance so he "might present more evidence since there's [sic] currently three outstanding lawsuits." *See Pl.'s Resp.*, Exh. H at 21-22. However, the only issue was Taggart's default status as to his loan – not whether GMAC was accused of fraudulent practices such as using robo-signed documents or overcharging on escrow elsewhere, or whether the foreclosure which was being litigated in state court was proper.

affected his ability to present his case, nor does he explain what he would have done with more time or how much time would have been sufficient. A limitless amount of time is not what the Constitution demands and, short of Taggart articulating specific <u>relevant</u> evidence he could have presented had he had more than one hour,[10] I conclude that Taggart has not shown that any time constraints impaired his ability to tell his side of the story.

Second, Taggart claims that Technical Advisor, Kathleen Roe, did not know why she was there and from that concludes that HUD did not know the "nature of the complaint in advance" or what the "issue" was on the day of the hearing.[11] *Pl.'s Br.* at 2-4. This assertion is inconsistent with the transcript; however, even if it were accurate, Taggart's argument holds no water. Taggart was well aware of why he was attending the conference, as evidenced by his prior communications with HUD. Moreover, the HUD officials present at the conference plainly understood the issue being addressed at the conference. This conclusion is evident from a review of the conference transcript and the June 14, 2012 final decision letter, notwithstanding Taggart's out-of-context quote from the HUD technical representative.[12]

Taggart's third claim – that he was denied the right to counsel – is clearly without merit. First, there is no right to counsel in an administrative proceeding like this one. Second, in the

---

[10] Again, during the conference, Taggart made general complaints about the time limit without explaining what relevant evidence or germane argument he could have made with more time. *See, e.g.*, *Pl.'s Resp.*, Exh. H at 18-19, 26 (complaining that one hour was not "fair" because there was "so much here"); *id.* at 28 (stating that he did not have enough time to discuss an entire memorandum summarizing HUD's audit of GMAC's foreclosure process; yet that memorandum was accepted as part of one of Taggart's exhibits).

[11] In a similar aspiration, one can only hope that all judges are fully aware of every issue they could possibly face each time they sit upon the bench.

[12] Taggart quotes the transcript where Roe states that Taggart should direct his questions to Triolo because she was just there as a technical representative and later says, "[t]he question is, if you come today, you can tell us what the issue is, because we don't know the issue." *See Pl.'s Br.* at 3-4 (citing transcript at 7, 15). However, a review of the quote in full context reveals that Roe was merely explaining to Taggart that the purpose of the conference was to hear Taggart's challenge to the removal. It was not that Roe was clueless as to why she or anyone else was present – especially since immediately preceding the quote cited by Taggart, Roe explained why Taggart's name appeared on CAVRS. *See Pl.'s Resp.*, Exh. H at 13.

May 10, 2012 letter sent by HUD to Taggart, providing the conference dates and background information on the conference, HUD plainly stated that the conference would be a chance for Taggart or his "designated representative" to explain why he should not be removed from the Roster. *See Pl.'s Resp.*, Exh. F.  Clearly Taggart was permitted to retain counsel to assist him at the conference if he chose to have representation.

Fourth, Taggart claims that his inability to examine HUD's evidence resulted in a proceeding without due process.  However, due process under these circumstances requires only that the individual who is to be removed from the Appraiser Roster be afforded the opportunity to be heard – that is, the individual must be heard <u>by the government agency</u>, not that the government agency has to be heard <u>by the individual</u>.  Moreover, Taggart does not indicate what evidence he wanted to see or witnesses he wanted to cross-examine, or whether there was evidence HUD relied on in its decision that he did not know about and could not therefore explain in his defense.  During the conference, Taggart was told multiple times that HUD was relying on the CAVRS data where GMAC reported a default.  *See, e.g.*, *Pl.'s Resp.*, Exh. H at 13, 50.  Any claim based on HUD's failure to produce evidence or prove its case is without merit.

Next, Taggart complains that HUD never provided him with the rules or instructions concerning the conference.  HUD regulations do not specify any procedures for the conference, and Taggart has not alleged that HUD produced a list of instructions or guide book and failed to provide them to Taggart.  However, the evidence shows that HUD did in fact provide Taggart with an overview of conference procedures.  HUD's May 10, 2012 letter informed Taggart that he had the right to attend the conference in person or via telephone, where he or his designated representative could challenge the removal and "provide any support for that proposition." *Pl.'s Resp.*, Exh. F.  HUD further explained who would be present at the conference and what would

occur after the conference took place.  Moreover, HUD specifically addressed Taggart's "concerns" and advised him that, in light of the informal nature of the conference, no discovery or subpoena power existed, but that Taggart was permitted to bring a court reporter at his own expense and present "any and all documentation" he wanted HUD to consider.  *Id.*  These undisputed facts show that Taggart reasonably knew what to expect going into the conference.

Sixth, Taggart claims that HUD did not even attempt to verify GMAC's report of Taggart's default status to ensure its accuracy.  He points to several excerpts from the conference transcript, one where Roe stated that HUD was not required to verify GMAC's report and another where Triolo stated that HUD only had GMAC's report to CAVRS.  *See Pl.'s Br.* at 4-5 (citing transcript at 14-15, 50).

Regardless of what HUD did or did not do prior to the conference, or during the conference, the record shows that HUD did follow up and investigate whether GMAC's report was correct.  In the June 14, 2012, final decision letter, Triolo specifically states that, as to the "fundamental question" of whether or not Taggart was in default on an FHA-insured mortgage, he independently confirmed and determined that Taggart's default status in CAVRS was accurate.  *See Pl.'s Resp.*, Exh. M.  He writes, "[m]y review of Neighborhood Watch,[13] FHA Case No. 441-8406221-703, confirmed that you are 39 months in default, owing your FHA-insured lender in excess of $162,000.00 in principal and interest payments, in addition to property taxes and insurance advanced on your behalf."  *Id.*  Triolo further explained in his affidavit the process he went through in verifying Taggart's default status and how Taggart's particular loan was deemed a "defaulted loan" as it was "90 or more days delinquent."  *See*

---

[13] Triolo explained in his affidavit that was submitted as part of the present motion that Neighborhood Watch is "an FHA web-based software application that displays loan performance data for lenders and appraisers, by loan types and geographic areas using FHA-insured single family loan information.  The loan information is displayed for a two-year origination period and is updated on a monthly basis."  *Triolo Aff.* ¶ 11.

*Triolo Aff.* ¶ 11.  Taggart does not point to any evidence refuting Triolo's claim that he verified Taggart's default status or that Triolo's finding was inaccurate.

Quite simply, Taggart was not satisfied with the nature of the conference because it fell short of a court proceeding with a judge determining his default status.  While Taggart would insist that default could not be determined until a judgment had been entered (and his ongoing foreclosure case in state court resolved), that is simply not what the regulations require.  The regulations clearly allow HUD to remove an appraiser if he or she is listed on CAVRS, and one is placed on CAVRS if he or she is in default on a federal loan.  *See* 24 C.F.R. § 200.202(b)(2).  The regulations do not require that HUD wait until a court adjudicates whether foreclosure was appropriate – and in turn determines whether the borrower was in default.  Since HUD followed the regulations as to Taggart's removal, I conclude that the agency's action was rational and based on relevant factors.

Finally, Taggart claims that HUD refused to take any evidence at the conference and he was not permitted to present witness testimony or documentary evidence.  HUD, on the other hand, asserts that Taggart was "allowed to present any evidence he wished to present," and he was repeatedly told that HUD representatives were there to listen to Taggart's response.  *Def.'s Reply Br.* at 2, 4.

A review of the transcript, and the other evidence of record, does not support Taggart's allegation that HUD "told Plaintiff that they would not receive any evidence at this conference." *See Pl.'s Br.* at 5.  In fact, the opposite is true.  In addition to being told by HUD via letter before the conference that he could present "any and all documentation" for HUD to consider, Taggart was told repeatedly[14] during the conference that HUD officials were there to hear his comments,

---

[14] Taggart was told at least 20 times during the conference that HUD was there to listen to his presentation and his side of the story.

objections, and his "side of the story." *See, e.g.*, *Pl.'s Resp.*, Exh. H at 11, 20-21; *see id.*, Exh. F. Also near the end of the conference, Triolo specifically asked Taggart if there was anything else he wanted to present. *Id.*, Exh. H at 65. At one point, Triolo explained the purpose of the conference: "It is just to hear your side of what transpired, and what we need to take into account once we—to make our determination . . . and provide you the opportunity to explain what other additional information we need in order to make our decision." *Id.* at 17. Not once did Taggart offer to present some evidence or testimony and that request was denied by HUD.

In fact, the transcript shows several of Taggart's exhibits were introduced, including an email chain and various letters exchanged between Taggart and HUD. *See generally id*. Those documents were marked for identification by the court reporter and made part of the record. *Id.* at 4, 14. The fact that Taggart presented some documents contradicts his claim that he was not allowed to present anything in support of his position, and he has not pointed to any evidence or anything in Triolo's findings to suggest that HUD refused to accept and consider those exhibits prior to making its final decision.

The issue before me is whether Taggart had the opportunity to be heard concerning his proposed removal. In other words, does the record show that Taggart was given the chance to present <u>relevant</u> evidence to support his position that he was improperly placed on CAVRS? Since the sole purpose of the conference was to give Taggart a chance to show that he had been listed erroneously, the only relevant evidence would be that pertaining to whether Taggart was in default, not whether the foreclosure action was properly filed in state court or whether GMAC was alleged to have engaged in fraudulent mortgage practices on a nationwide basis.

As to the documents Taggart would have presented to show he was not in default, Taggart now claims that he would have presented evidence that (1) GMAC "could not produce

the forced place insurance policy"; (2) GMAC admitted to using documents signed by robo-signer Jeffrey Stephen in Taggart's foreclosure; (3) GMAC "paid Taggart's real estate taxes"; and (4) his mortgage payments were improperly calculated such that GMAC was demanding a too high monthly payment. *See Taggart Aff.* ¶¶ 36-37.

Despite these allegations, Taggart did not offer any proof of such claims – as far as they would be relevant to the default question *in his case* – during the conference, nor does he offer proof that HUD refused to accept any relevant evidence. Nor does the transcript reveal that Taggart requested an opportunity to obtain any relevant documents that would go to the issue of his default status. If Taggart believed that he was being overcharged for his monthly payments because GMAC was improperly charging him for lender-provided insurance, and that error led to his default status, all he needed to do was present a copy of an insurance policy that was in effect since the origination of the loan in July 2008 and that otherwise complied with GMAC's requirements.[15] The transcript shows that Taggart did not offer evidence of an insurance policy or other documents demonstrating he was improperly charged for forced insurance or that his default status was inaccurate for any other reason. Indeed, Triolo acknowledged that the insurance issue was raised by Taggart at the conference, but noted that Taggart offered "no testimony or documentation in support of the proposition [that he was improperly placed into forced insurance] or that the FHA lenders' actions were improper." *Triolo Aff.* ¶ 8; *see also Pl.'s*

---

[15] Even if I considered the evidence Taggart belatedly offers now, his exhibits do not raise a triable issue of fact as to whether he had proper insurance during the entire relevant time period (i.e. a policy in effect after 8/9/2008 with GMAC listed as loss payee) and he provided proof of that policy to GMAC, as he was required to do. *See Taggart Aff.*, Exh. 2 (insurance policy effective 8/9/2007 to 8/9/2008, which only partially covers the time in question); *id.*, Exh. 4 (letter dated 10/9/2008 from GMAC requiring proof of insurance with an effective date of 7/11/2008 and GMAC named as mortgagee in the loss payee clause, or warning Taggart that he would be charged for lender provided insurance). Furthermore, the affidavit from Taggart's insurance agent, Jeffrey Delp, does not, as explained in more detail below, show that Taggart ever complied with GMAC's requirements and furnished GMAC with what it asked for. *See id.*, Exh. 1.
    More critical to the due process issue, Taggart did not offer any of this evidence at the time of the conference when he had the opportunity to challenge GMAC's report of default.

*Resp.*, Exh. M.

In a related grievance, Taggart complains that he could not present witnesses, "such as Taggart's agent, Jeffrey Delp, the tax collector for the township, and GMAC." *Taggart Aff.* ¶ 35. However, a review of the conference transcript and the communication between HUD and Taggart, demonstrates that there was no occasion when Taggart requested the opportunity to bring any of them, or anyone else, in to testify on his behalf and that such a request was ever denied by HUD. While Taggart now offers an affidavit from insurance agent Jeffrey Delp, there is nothing in the record suggesting he was available at the time of the conference and HUD denied him the opportunity to testify on Taggart's behalf, nor is there any explanation of what he would have testified to that could have made a difference in HUD's final decision.[16]

The gravamen of Taggart's complaint is that he was not provided a full-blown adversary trial by jury to determine his list of grievances. While Taggart may feel that his rights were not adequately protected with a mere "conference" – or anything less than adjudication in a courtroom – this is simply not what the law requires. The law demands an opportunity for Taggart to be heard on the relevant issue prior to final deprivation of any property interest. Based on the record before me, I find that HUD provided Taggart with adequate notice and a meaningful opportunity during the conference to explain why he should not be removed from the Appraiser Roster. The record reflects that Taggart had the opportunity to present evidence and challenge the factual basis upon which he was declared in default and placed on CAVRS. Once the conference was held and HUD determined that the underlying reason for Taggart's

---

[16] As noted previously, if Taggart had insurance and his allegation was that GMAC was improperly charging him for lender-provided insurance, he simply had to provide proof of that insurance. No copy of his insurance for the entire relevant period has ever been produced. Delp's affidavit states that Taggart's property had adequate home owners insurance throughout the duration of the loan, but fails to address whether Taggart offered proof of such a comprehensive insurance policy with loss payable to GMAC. *See Taggart Aff.*, Exh. 1. More fundamentally, it does not touch on the issue of whether Taggart had an adequate opportunity during the conference to explain to HUD why he was not in default.

ineligibility was accurate, HUD properly removed Taggart from the Appraiser Roster.

## IV. CONCLUSION

In sum, I find that Taggart was given a full and fair opportunity to show he should not have been removed from the Appraiser Roster. Because Taggart received all the process he was due, HUD's decision was not arbitrary and capricious, and the federal defendants are entitled to summary judgment.

An appropriate order will follow.